**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BIKUR CHOLIM, INC.; RABBI SIMON | : | |
| LAUBER; FELLOWSHIP HOUSE OF | : | |
| SUFFERN, INC.; MALKA STERN; MICHAEL | : | |
| LIPPMAN; SARA HALPERIN; ABRAHAM | : | |
| LANGSAM and JACOB LEVITA, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 7:05-cv-10759 (WWE) |
| | : | |
| VILLAGE OF SUFFERN, | : | |
| Defendant. | : | |
| ----------------------------------------------------------X | | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 7:06-cv-7713 (WWE) |
| | : | |
| VILLAGE OF SUFFERN, | : | |
| Defendant. | : | |

**MEMORANDUM OF DECISION ON VARIOUS MOTIONS**

These consolidated actions arise from the denial by the Village of Suffern Zoning

Board of Appeals[1] of an application for a zoning variance that would permit plaintiffs

Bikur Cholim, Inc., Rabbi Simon Lauber and the Fellowship House of Suffern, Inc.

(collectively "Bikur Cholim") to use their property in Suffern, New York as a guesthouse

for observant Jewish visitors to Good Samaritan Hospital in Suffern.

Bikur Cholim, together with Malka Stern, Michael Lippman, Sara Halperin,

Abraham Langsam and Jacob Levita (collectively "private plaintiffs"), commenced this

action on December 23, 2005.  The United States of America filed suit on September

---

[1]     The Zoning Board of Appeals is not a party to either action pending before
the Court.

26, 2006.  These actions were then consolidated.

Now pending before the Court are (1) private plaintiffs' motion for a preliminary injunction (Doc. #4);[2] (2) private plaintiffs' second motion for a preliminary injunction (Doc. #17); (3) defendant Village of Suffern's motion to dismiss private plaintiffs' complaint and for a preliminary injunction (Doc. #23); (4) defendant's motion to dismiss the United States' complaint (Doc. #88; 7:06-cv-7713, Doc. #3); (5) the United States' motion for summary judgment or, in the alternative, for a preliminary injunction (Doc. #133); (6) defendant's motion for summary judgment (Doc. #142); and (7) private plaintiffs' motion to strike (Doc. #151).

Plaintiffs have brought this action pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA").  The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and the pendent state claims pursuant to 28 U.S.C. § 1367.  The United States is authorized to bring claims pursuant to 42 U.S.C. § 2000cc-2(f).

Because the relevant factual background is different for the motions to dismiss and the motions for summary judgment, the Court will review the facts and allegations pertinent to each separately.

I.      **Motions to Dismiss**

        A.      **Background on Motions to Dismiss**

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true.

_____

        [2]      Unless otherwise stated, all citations to a docket entry are in case 7:05-cv-10759.

### 1.      Private Plaintiffs' Amended Complaint (Doc. #22)

Plaintiff Bikur Cholim, Inc. is a New York not-for-profit corporation.  Since 1988, it has sought to accommodate the religious exercise of Jewish families of patients at three hospitals, including Good Samaritan Hospital in Suffern.  Plaintiff Rabbi Simon Lauber is the Founder and Executive Director of Bikur Cholim, Inc.  Plaintiff Fellowship House of Suffern, Inc. owns the facility in Suffern and leases it to Bikur Cholim for ten dollars per month.  The facility ("Shabbos House") is located at 5 Hillcrest Road in Suffern.  Plaintiffs Malka Stern, Sara Halperin, Michael Lippman, Abraham Langsam and Jacob Levita are observant Jews who have used, currently use or expect to use the Shabbos House.

Jewish law prohibits travel on the Sabbath – from sunset on Friday to sunset on Saturday.  This prohibition includes a prohibition from operating, driving or riding in a motor vehicle.  In addition, Jewish law prohibits using electricity or spending money on the Sabbath.  These restrictions also apply to the approximately ten holy days throughout the Jewish year which have similar restrictions as the Sabbath.

Bikur cholim is a Jewish commandment to visit the sick.  Observant Jews believe that bikur cholim is one of the most important commandments.

The Shabbos House provides overnight accommodations for those unable to travel on the Sabbath to visit patients at Good Samaritan Hospital.  Its use is limited to Friday nights and the ten holy days.  Bikur Cholim does not charge its guests for stays. Rabbi Lauber claims that the operation of this house is a fundamentally important aspect of his religious exercise and is motivated by his sincere religious beliefs.  He further alleges that forcing him to discontinue his administration of the Shabbos House

would substantially burden his religious exercise.

Private plaintiffs contend that some patients would not seek treatment were it not for Bikur Cholim's accommodation of their family members and visitors. Sabbath, holiday and daily prayers are held at the Shabbos House.

From 1998 until 2000, the Shabbos House was located at a different site in a residential neighborhood. It was then housed inside Good Samaritan Hospital until 2005 when it moved to its current location. On April 26, 2005, Village Code Enforcement Officer John Loniewski issued violation notices under Suffern's Building and Zoning Code section 205-3(A)(3) citing the presence of "cardboard boxes, garbage, pizza boxes, fast food wrappers and construction debris" on the porch. Loniewski also issued a notice violation under section 266-22(B) of the Building and Zoning Code for a "use not in compliance with the certificate of Occupancy on File," which certificate was issued for an "erect single family dwelling." On May 9, an Order to Remove Violation was issued for a May 6 use violation.

On July 7, 2005, Loniewski issued a violation under Building and Zoning Code section 205-3(A)(4) citing "old wood slats, paper bags, broken ceramic tiles and garbage," which, private plaintiffs contend, were being stored under the house's back porch. Loniewski also issued a violation notice under section 205-3(A)(5) for "overgrown bushes and shrubs" and "the lawn not ... mowed and many dead tree limbs." Private plaintiffs assert that the bushes were not overgrown and that the grass was newly planted and could not yet be mowed.

Private plaintiffs allege that while the Shabbos House was receiving property maintenance violations, the property at 7 Hillcrest Road was littered with debris and

garbage and no violations were issued.

On July 12, Loniewski entered the Shabbos House by following a staff member. He issued a violation under section 404.4.1 of the New York Property Maintenance Code because there were too many beds in the master bedroom given the square footage of the room.  On August 1, Loniewski issued a violation notice under section R317.1 of the New York Residential Code citing "no smoke alarms in the sleeping rooms formerly designated as the den and the dining room."  All fines except for the one for the improper use violation were resolved in August 2005 by correction of the problem and payment of $2,500 in fines.  The improper use violation was held in abeyance conditional upon the Shabbos House applying for a use variance before the Zoning Board of Appeals, which application occurred on August 1, 2005.

The Shabbos House is located in an "R-10" zoning district.  Such zoning allows use by right of the property for one-family detached dwellings and places of worship. By special permit, the following are allowed in an R-10 district: public utility building substations, utility lines and poles serving 25 or more kilowatts; standpipes and water towers; public and private hospitals and sanitariums; convalescent and nursing homes; private membership clubs; public schools; colleges; dormitories accessory to schools; private and public elementary or secondary schools; nursery schools; daycare centers; and home occupations.  Sections 266-2 and 266-33(F) permit dormitories in the R-10 zoning district "only as accessory uses to schools of general or religious instruction...." Bikur Cholim's use was not considered a "dormitory."  There is no zoning district within Suffern that permits "transient/motel uses" or temporary accommodations.  Private plaintiffs assert there is no other location within reasonable and safe walking distance

5

that could house Good Samaritan Hospital patients or their family members and that there are no available alternate locations in Suffern where Bikur Cholim may locate the Shabbos House.

On August 2, 2005, Bikur Cholim submitted an application for a use variance to continue operating the Shabbos House in the R-10 zone.  The application sought a variance from Suffern Zoning Law section 266-22(B) which states that "[o]nly those uses listed for each district as being permitted shall be permitted.  Any use not specifically listed as being permitted shall be deemed to be prohibited."  The application requested use of:

> a one family residence for overnight occupancy for up to 17 people, who are family members of the patients at Good Samaritan Hospital.  Overnight occupancy will be limited to Fridays and approximately 10 Jewish Holiday days, when travel is not permitted.  There is no charge for cover....  The accommodations are offered, without charge as a community service.  This service is offered in conjunction with Good Samaritan Hospital....

Bikur Cholim asserts that it is willing to limit the occupancy of the Shabbos House to fourteen individuals.  The application claims that the variance was necessary for a "community hardship."

Suffern defined Bikur Cholim's use as a "transient/motel use."  There is no definition for "transient/motel use" in Suffern's Zoning Law.  Under Zoning Law section 266-54(D)(3), the Village Board of Appeals may grant a use variance upon "a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship."  To show such hardship under section 266-54(D)(3)(a), the applicant must demonstrate that: (1) it cannot realize a reasonable return, provided that

6

the lack of return is substantial as demonstrated by competent financial evidence; (2) the alleged hardship relating to the property in question is unique and does not apply to a substantial portion of the district or neighborhood in which it is located; (3) the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) the alleged hardship has not been self-created."  Section 266-54(D)(1) provides that the "Board of Appeals is authorized to vary or modify the strict letter of this Zoning Law where its literal interpretation would cause practical difficulties or unnecessary hardships in such manner as to observe the spirit of the law, secure public safety and welfare and do substantial justice."  The Zoning Board of Appeals unanimously denied Bikur Cholim's application on November 17, 2005, which decision was filed with the Village Clerk on November 29.

Private plaintiffs bring claims under RLUIPA for substantial burden on religious exercise, 42 U.S.C. § 2000cc(a); for nondiscrimination, 42 U.S.C. § 2000cc(b)(2); for "equal terms," 42 U.S.C. § 2000cc(b)(1); and for "exclusion and limits," 42 U.S.C. § 2000cc(b)(3).  They also assert that their rights under the Free Exercise and Free Association Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution were violated, and they assert claims under 42 U.S.C. § 1983.  Finally, they allege that their rights under the New York State Constitution were violated.  They seek declaratory and injunctive relief.

In its answer to private plaintiffs' amended complaint, defendant asserts a counterclaim that private plaintiffs' use of the property is an illegal use and a violation of Suffern Village Code chapters 162 and 205.

### 2.      The United States' Complaint (7:06-cv-7713, Doc. #1)

The United States' complaint alleges that the Zoning Board's denial of Bikur

Cholim's variance application and Suffern's enforcement of such denial constitute an

imposition or implementation of a land use regulation within the meaning of RLUIPA, 42

U.S.C. § 2000cc(a)(1), and that such denial and enforcement substantially burden the

religious exercise of Orthodox Jews who need to visit the sick at Good Samaritan

hospital while observing religious proscriptions against driving on the Sabbath and other

Holy Days.  The United States further claims that such denial and enforcement of the

Zoning Law do not further a compelling government interest, and even if they did, they

are not the least restrictive means of doing so.

### B.      Discussion

The function of a motion to dismiss is "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support

thereof."  Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774,

779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept all

well-pleaded allegations as true and draw all reasonable inferences in favor of the

pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the

grounds upon which the claim rests through factual allegations sufficient "to raise a right

to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  A

plaintiff is obliged to amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible.  Iqbal v. Hasty, 490

F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading),

rev'd on other grounds sub nom., Ashcroft v. Iqbal, 129 S. Ct. 1937.

For purposes of ruling on the motions to dismiss, the Court only reviews the

pleadings and the exhibits to them.  Samuels v. Air Transport Local 504, 992 F.2d 12,

15 (2d Cir. 1993).  Additional facts submitted in a motion to dismiss, or exhibits thereto,

are not reviewed by the Court at this stage.  Further, the Court accepts as true all

allegations of fact, but not conclusory statements of law.  Ashcroft v. Iqbal, 129 S. Ct. at

1949 ("[A] court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.").

### 1.    Motion to Dismiss Private Plaintiffs' Amended Complaint

### a.    Whether Private Plaintiffs' Claims are Ripe

Defendant first argues that private plaintiffs' claim under RLUIPA is not ripe

because Bikur Cholim's application for a variance before the Zoning Board offered

perfunctory and insufficient evidence.  Defendant also asserts that Bikur Cholim failed

to appeal the Code Enforcement Officer's determination that its use was not

permissible to the Zoning Board of Appeals.  Instead, Bikur Cholim sought a use

variance.  Private plaintiffs argue in response that (1) their facial challenge to the zoning

law has no finality requirement; (2) Bikur Cholim's citation for improper use became

final once it did not appeal the citation to the Zoning Board of Appeals; (3) the Zoning

Board of Appeals' denial of Bikur Cholim's use variance constitutes a final decision that

may be challenged before this Court; (4) its proposed use would not meet a stated exception to the zoning law; (5) the adequacy of Bikur Cholim's variance application is irrelevant to the ripeness analysis; and (6) by seeking a preliminary injunction, defendant has made these issues ripe for adjudication.

The question of ripeness raises issues of Article III's case or controversy requirement as well as prudential limitations on the exercise of judicial authority.  See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 n.7 (1997).  It requires a determination of whether the Court should defer until such time as the claims have matured into a more appropriate form before the Court.  Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967).

In a land use case like this one, four factors are relevant to the ripeness analysis. Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985).[3]  As the Court explained in Murphy v. New Milford Zoning Comm'n, 402 F.3d 342 (2d Cir. 2005):

> First, ... requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.  Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel.  Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible.  Finally..., federalism principles also buttress the finality requirement.  Requiring a property

---

[3]        The Supreme Court in Williamson addressed the ripeness requirement in a Takings context.  The Takings analysis is not relevant here, even though the remainder of the Supreme Court's analysis related to land use challenges is.

> owner to obtain a final, definitive position from zoning
> authorities evinces the judiciary's appreciation that land use
> disputes are uniquely matters of local concern more aptly
> suited for local resolution.

Murphy, 402 F.3d at 347.

There are, however, exceptions to the rule of ripeness.  Where an appeal to a

zoning board would be futile, the plaintiff need not appeal to that board.  Southview

Assoc., Ltd. v. Bongartz, 980 F.2d 84, 98 (2d Cir. 1992); see also Murphy, 402 F.3d at

349 ("[A] property owner need not pursue such applications when a zoning agency ...

has dug in its heels and made clear that all such applications will be denied.").  In

general, however, failure to seek a variance prevents a zoning decision from becoming

ripe.  Williamson, 473 U.S. at 190.

As to defendant's first argument in support of its claim that this controversy is not

yet ripe – that Bikur Cholim's application for a variance was perfunctory – the merits of

the Zoning Board's rejection of the application is not properly before the Court on a

motion to dismiss.  Whether the application was inadequate and properly dismissed on

its merits or was adequate and was rejected in violation of RLUIPA is a fact-based

question better suited for summary judgment.  What matters at this stage is whether

private plaintiffs adequately pleaded that their variance was denied.  That, they did.

See Amended Complaint ¶ 62.

The crux of defendant's claim that this case is not yet ripe is that Bikur Cholim

did not appeal Loniewski's violation notice under Building and Zoning Code section

266-22(B) issued on April 26, 2005.  The Court disagrees and finds Bikur Cholim's

failure in this regard to be irrelevant.  First, private plaintiffs claim that the violation was

held in abeyance pending the application for a use variance.  Second, and more

importantly, after this violation, Bikur Cholim sought a use variance from the Zoning

Board of Appeals, which was denied.

A case is ripe when the court "can look to a final, definitive position from a local

authority to assess precisely how they can use their property."  Murphy, 402 F.3d at

347.  The Court can look at the Zoning Board of Appeals' decision as a definitive ruling

on how Bikur Cholim can use its property.  It is the denial of the application that serves

as the basis for jurisdiction before the Court.

### b.      Whether Private Plaintiffs Have Sufficiently Alleged a Violation of RLUIPA

Defendant next moves for dismissal arguing that private plaintiffs have failed to

allege a prima facie case of a violation under RLUIPA.  RLUIPA prohibits a government

from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a

substantial burden on the religious exercise of a person ... or institution, unless the

government demonstrates that imposition of the burden on that person ... or institution

is in furtherance of a compelling governmental interest and is the least restrictive means

of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1);

Westchester Day Sch. v. Vill. of Mamaroneck, 386 F.3d 183, 186 (2d Cir. 2004)

("Westchester Day Sch. I").  "Religious exercise" is defined to include "any exercise of

religion, whether or not compelled by, or central to, a system of religious belief."  42

U.S.C. § 2000cc-5(7)(A).  "The use, building, or conversion of real property for the

purpose of religious exercise shall be considered ... religious exercise."  42 U.S.C. §

2000cc-5(7)(B).  "Religious exercise" under RLUIPA is to be defined broadly and "to the

maximum extent permitted by the terms of this chapter and the Constitution."
Westchester Day Sch. v. Vill. of Mamaroneck, 504 F.3d 338, 347 (2d Cir. 2007)
("Westchester Day Sch. III"); 42 U.S.C. § 2000cc-3(g).

To state a claim for violation of RLUIPA, plaintiffs must present evidence that the
land use regulation at issue as implemented: (1) imposes a substantial burden (2) on
the "religious exercise" (3) of a person, institution, or assembly.  42 U.S.C. §
2000cc(a)(1); Westchester Day Sch. v. Vill. of Mamaroneck, 379 F. Supp. 2d 550, 555
(S.D.N.Y. 2005) ("Westchester Day Sch. II"); Murphy v. Zoning Comm'n of the Town of
New Milford, 148 F.Supp. 2d 173, 187 (D. Conn. 2001).  If plaintiffs are successful in
making that prima facie showing, the burden shifts to the government to demonstrate
that the regulation furthers a compelling governmental interest and is the least
restrictive means of furthering that compelling interest.  42 U.S.C. § 2000cc(a)(1)(A-B).

Accepting the factual allegations of the amended complaint as true, the Court
must conclude that private plaintiffs have established a prima facie claim under
RLUIPA.  First, they have sufficiently alleged that the denial of a use variance is a
substantial burden to their practice of Orthodox Judaism.  They claim that the inability to
operate the Shabbos House burdens their religion in two ways.  As to Rabbi Lauber,
they claim that the commandment of bikur cholim requires him to operate the house.
As to plaintiffs Stern, Lippman, Halpern, Langsam and Levita, private plaintiffs assert
that their religion is substantially burdened by being forced to choose between
observing the Sabbath and holidays and visiting the sick at Good Samaritan Hospital.
They further allege that they are being discouraged from seeking treatment at Good

13

Samaritan Hospital by the inability to find nearby accommodations.[4]

As to the religious exercise prong, the Court of Appeals in Westchester Day Sch. III commented that the district court must examine whether a particular use by a religious organization was for a religious purpose, such as prayer, or a secular purpose, such as a gymnasium in a religious school.  See Westchester Day Sch. III, 504 F.3d at 347-48.  If the improvement or building is to be used for religious education or practice, land use regulations related to it could affect the land users' religious exercise.  See id. at 348.

Here, private plaintiffs have sufficiently alleged that the Zoning Board's rejection of Bikur Cholim's use variance and defendant's enforcement of the Zoning Law served as burdens to their religious exercise as defined under RLUIPA.  The allegations related to Rabbi Lauber's religious obligation to operate a facility to enable observant individuals to visit the sick on the Sabbath and holidays as well as the other individual plaintiff's obligations to observe the Sabbath while being able to visit their family members at Good Samaritan Hospital implicate their religious exercise.  See Cathedral Church of the Intercessor v. Incorporated Vill. of Malverne, 2006 U.S. Dist. LEXIS 12842, *25-26 (E.D.N.Y. Mar. 6, 2006).

Finally, there is no dispute that private plaintiffs are persons and institutions under the law.  Therefore, private plaintiffs have met their burden of showing a prima

---

[4]      In their response to the motion to dismiss, private plaintiffs claim that they cannot go to the hospital on the Sabbath because they cannot secure accommodations for their family.  This allegation was not included in the amended complaint, and, therefore, the Court is not relying on it.  The United States' complaint is similarly silent on this allegation.

facie case under RLUIPA.

The Court notes defendant's argument that private plaintiff's proposed use is analogous to a group of individuals sharing a communal home.  At this juncture, the Court only reviews the pleadings and takes factual allegations at their word.  Whether defendant's actions support plaintiff's contention that the enforcement of the Zoning Law would constitute a substantial burden on private plaintiffs' religious exercise is not a question to be answered on a rule 12(b) motion to dismiss.

In addition, defendant argues that it has a compelling interest in enforcing its zoning regulations and in prohibiting transient uses such as private plaintiffs', it has used the least restrictive means of enforcing such regulations.  This defense to a RLUIPA claim is not before the Court as the Court determines whether private plaintiffs have pleaded a prima facie case.  The Court will address it below, when it analyzes the parties' summary judgment papers.  Dismissal at this stage is inappropriate as to private plaintiffs' RLUIPA claim.

### c.    Private Plaintiffs' Free Association Claim

Defendant next moves to dismiss private plaintiffs' claim for a violation of their First Amendment rights to free association.  The First Amendment provides that the government "shall make no law ... abridging ... the right of the people peaceably to assemble...."  This protection embraces two types of associational rights: (1) intimate human relationships, and (2) association for purposes of engaging in protected speech. Roberts v. United States Jaycees, 468 U.S. 609, 617-618 (1984).  It also includes the right to assemble for religious exercise.  See Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 996-997 (2d Cir. 1997).

15

Private plaintiffs adequately allege that they have been denied the right to assemble at the Shabbos House for religious exercises. The Court will therefore leave these plaintiffs to their proof and deny dismissal on this count. Again, whether the zoning regulations are neutral is not a question for this motion.

### d.    Private Plaintiffs' Equal Protection Claim

Defendant argues that private plaintiffs have failed to allege a claim under the Equal Protection Clause of the Fourteenth Amendment. In order to state such a claim, private plaintiffs must allege that they are (1) similarly situated to an entity (2) that was treated differently. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 137 (3d Cir. 2002); see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985). To meet the first prong, plaintiffs must allege that they were similarly situated to property owners that sought a similar variance for a similar plot of land. Burke v. Town of E. Hampton, 2001 U.S. Dist. LEXIS 22505, *21-22 (E.D.N.Y. Mar. 16, 2001).

Private plaintiffs have made no allegations of similarly situated property owners to survive dismissal on this claim.[5] Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau, 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999). Dismissal would thus be appropriate but for private plaintiffs' argument that the zoning law treats religious organizations unequally because it allows dormitories and nursery homes to operate through special permits, which are similar uses to Bikur Cholim's. Private plaintiffs' claim that the zoning law on its face violates their rights under the Equal

---

[5]    To the extent that private plaintiffs allege that the house at 7 Hillcrest Road also had debris in its yard but did not receive a violation, this allegation of uneven enforcement is not relevant to the challenge to the Zoning Law preventing the existence of the Shabbos House.

Protection Clause is unsupported by any citation to case law. Nor do private plaintiffs point in their amended complaint to any nursing homes or dormitories existing within the Village of Suffern.

This facial challenge to the law is purely hypothetical. Private plaintiffs, in essence, suggest that, although there are not comparators, a secular comparator would receive better treatment than private plaintiffs did. In this sense, this claim is not a Fourteenth Amendment claim. Instead, it is either a free exercise claim under the First Amendment or under RLUIPA. See Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 532 (1993) ("At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."); 42 U.S.C. § 2000cc(b)(1) ("No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."); see also Third Church of Christ v. City of New York, 2008 U.S. Dist. LEXIS 99822 (S.D.N.Y. Dec. 2, 2008). Without any comparators pleaded in the amended complaint for the Court to examine, private plaintiffs' claim under the Equal Protection Clause cannot stand. Therefore, it will be dismissed.

### e.    Claim for Article 78 Relief

Private plaintiffs assert a claim for relief under Article 78 of the New York Civil Practice Law and Rules. Defendant seeks dismissal of this claim, contending that Bikur Cholim's application for a variance was insufficient. As the Court discussed above, the adequacy of Bikur Cholim's variance application should not be reviewed based on the

amended complaint, but based on the full record as developed through discovery. Therefore, the Court will not dismiss this claim under rule 12(b)(6).

### f.       Conclusion as to the Motion to Dismiss Private Plaintiffs' Amended Complaint

For the reasons discussed above, the Court will grant defendant's motion to dismiss private plaintiffs' amended complaint only as to the claim for relief under the Equal Protection Clause of the Fourteenth Amendment.  As to all other claims, the motion will be denied.

### 2.       Motion to Dismiss United States' Complaint

Defendant moves to dismiss the United States' complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that (1) the United States' claim is not yet ripe; (2) the United States has not alleged that the Shabbos House constitutes a religious exercise; (3) the United States has failed to allege that there has been a substantial burden on Orthodox Jews' religious exercise; (4) Suffern has a compelling interest in implementing and enforcing its zoning regulations; and (5) the United States has failed to allege that Suffern did not use the least restrictive means in enforcing its zoning regulations.

The analysis applicable to the private plaintiffs' amended complaint applies also to the United States' complaint.  Because the United States has sufficiently alleged in its complaint a violation of RLUIPA as it relates to the Shabbos House, the motion to dismiss its complaint will be denied.  The United States adequately pleaded that the denial of the variance constituted a substantial burden on Orthodox Jews, and the United States is able to bring this action pursuant to 42 U.S.C. § 2000cc-2(f), which

18

provides that the "United States may bring an action for injunctive or declaratory relief to enforce compliance with this Act."

Accordingly, the Court will deny defendant's motion to dismiss the United States' complaint.

## II.   Motions for Summary Judgment

The United States has filed for summary judgment related to its action (7:06-cv-7713), while the Village of Suffern has filed a cross motion related to both actions.

### A.   Background on Summary Judgment

The parties have submitted briefs, a stipulation of facts and supporting exhibits which reflect the following factual background.[6]

The Shabbos House is located directly across the street from the entrance to Good Samaritan Hospital at 5 Hillcrest Road in the Village of Suffern.  It is between a commercial office building with a parking lot and residential homes.  It is located in an R-10 zoning district.

The emergency room of Good Samaritan Hospital treats approximately 36,000 patients per year, approximately five to ten percent of whom are observant Jews.

_____

[6]     Several of defendant's statements of fact are not supported with citations to admissible evidence.  Where appropriate, the Court has disregarded such statements.  In addition, to several of plaintiffs' statements of fact, defendant denied the allegation without citation to the support for its denial.  Plaintiffs' statements, in these instances, will be accepted as true.  See Local Rule of Civil Procedure 56.1(d).  Additionally, defendant offers the affidavit of Robert Geneslaw, a land use expert.  Although Geneslaw was sworn, much of his testimony does not appear to be made on the basis of personal knowledge, and he does not aver that it was.  Therefore, this testimony will be disregarded by the Court, as appropriate.  See Fed. R. Civ. P. 56(e)(1) ("A supporting ... affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

### 1. Background on Suffern Zoning Law and Shabbos House Placement

According to the Village of Suffern Zoning Law, one-family detached dwellings and places of worship are both permitted uses in an R-10 district.  By special permit, the zoning law allows public utility buildings and substations (subject to certain limitations); hospitals, sanitariums and convalescence and nursing homes; private membership clubs; dormitories accessory to schools; nursery, elementary and secondary schools; home occupations; hospital heliports; and medical office buildings on the campus of a hospital.  There is no provision in the zoning law for transient-use hotels or motels.  The minimum lot size required for a single family dwelling is 10,000 square feet with a minimum width of 90 feet.

Rabbi Lauber is an Orthodox Rabbi.  After his own hospitalization in 1981, he established Bikur Cholim, Inc. as a nonprofit organization to observe the religious obligation of bikur cholim.  He believes it his religious mission to bring comfort and ease the anxiety and pain of patients and their families.  Bikur Cholim, Inc. operates the Shabbos House to further this goal.

From 1988 until 2001, the Shabbos House was located at 1 Campbell Avenue, on Good Samaritan Hospital's grounds in Suffern.  From 2001 until 2005, the Shabbos House was located within Good Samaritan Hospital.  Because of certain developments in 2004, Bikur Cholim was no longer able to operate out of the hospital.

On May 12, 2004, a developer unrelated to Bikur Cholim applied for area variances to permit the construction of a single family house at 5 Hillcrest Road.  The developer had to obtain a variance to build such house because the lot did not meet the

20

minimum lot size or width requirement under the Zoning Law.  While the minimum lot size for a single-family dwelling is 10,000 square feet, the lot at 5 Hillcrest Road is 9,286 square feet.  The minimum width requirement is 90 feet, but the lot at 5 Hillcrest Road is 75 feet.  The variances were approved by the Zoning Board of Appeals on July 22, 2004. The house was built in 2005, and the developer was issued a certificate of occupancy on February 2, 2005.  The certificate of occupancy stated that the "intended use" was for a "single family dwelling."

Fellowship House purchased the house and now leases it to Bikur Cholim for ten dollars per annum.  Good Samaritan Hospital provides parking for guests of the Shabbos House, and Rabbi Lauber averred that there would likely be no more than two cars parked in front of the Shabbos House at any time.

As of July 12, 2005, the Shabbos House was set up with six beds in the master bedroom, two beds in bedroom no. 2, three beds in bedroom no. 3, three beds in the former den and three beds in the former dining room.  The Shabbos House does not have an automatic sprinkler system.

### 2.    Relevant Jewish Law

Observant Jews observe the Sabbath from sundown Friday to sundown Saturday.  In addition, there are six holidays comprising ten to eleven days per year. Together, there can be sixty-three such Sabbath and Holy Days.  On certain occasions, the Sabbath can immediately precede or follow such Holy Days, creating a three day "holiday."

On the Sabbath and these Holy Days, observant Jews are obligated to abstain from certain conduct.  Specifically, they refrain from using electricity, using combustion

engines (e.g., driving), carrying objects in public areas and walking outside a certain radius.  These restrictions may be relaxed when there are life-threatening circumstances.  When there is a even a remote threat to life, Jewish laws requires individuals to engage in otherwise forbidden acts, such as driving a car to seek medical attention.  Once the danger has passed, however, these acts become forbidden again.  Because of the restrictions, an observant Jew could not register at or pay for a hotel or carry money, keys or identification.

On the Sabbath and Holy Days, observant Jews are obligated to follow certain rituals.  For example, they must wash their hands before meals, consume a minimum quantity of bread during each of three meals, recite certain prayers over a cup of wine and pray three times per day.

The Jewish obligation to visit the sick includes providing for the comfort and emotional tranquility of the patient.  It also requires children to perform personal services on behalf of a parent, such as assistance with feeding, even where assistance from others is available.

The Shabbos House provides lodging, meals and a place to pray for observant Jews who are at Good Samaritan Hospital on the Sabbath or Holy Days.  Plaintiffs also claim that it encourages those people needing medical care on the Sabbath or Holy Days to seek it by allowing them a place to stay if the medical needs, and thus the exigent circumstances, abate on the Sabbath or Holy Days.  In such scenarios, patients will not be left without sleeping accommodations or kosher food.  The Shabbos House thus eliminates the difficulties of complying with the Sabbath rules and the requirement

to seek medical care where there is even a remote threat to life.[7]  Plaintiffs contend that observant patients may also terminate treatment in the absence of the Shabbos House so that they may reach home before the onset of the Sabbath.  They assert that when such observant individuals visit the emergency room on Friday afternoons, they will request quick treatment so as to be able to return home before the Sabbath begins.

The Shabbos House encourages family members to fulfill their Jewish obligation to give personal care and assistance to the sick and one's parents.  Although plaintiffs term this an "obligation," several private plaintiffs testified that the obligation of bikur cholim is secondary to the laws of the Sabbath.  That is, they could not violate the Sabbath to visit or care for the sick on that day if they did not have accommodations to make it possible.  How they approach this dilemma, they testified, turns on the proximity of the sick person and their personal relationship.[8]  The Shabbos House further enables family members to be near patients who may have a language barrier with hospital staff and allows family members to be physically present at the hospital when medical decisions must be made during the Sabbath.

### 3.    Private Plaintiffs

Private plaintiffs Malka Stern, Michael Lippman, Sara Halperin and Jacob Levita are observant Jews who have stayed at the Shabbos House on the Sabbath to visit an ill relative or spouse.  Each private plaintiff lives outside walking distance from Good

---

[7]    None of the private plaintiffs claim to be patients or potential patients of Good Samaritan Hospital for whom these circumstances are likely to occur.

[8]    Although, as discussed below, the Court should not and cannot question the importance of a religious obligation, the absoluteness of the obligation is relevant to whether a burden on its observation is substantial under the law.

Samaritan Hospital and has stayed at the Shabbos House when they could no longer visit at the Hospital.  They each used the Shabbos House to sleep, eat and pray.  They also assert that without the Shabbos House, they would be forced to choose between observing the Sabbath and visiting their family members.  Stern attended to her husband daily for six weeks when he was hospitalized with Alzheimer's disease and unable to speak.  Levita visited his father each Sabbath.  Lippman and Halperin are brother and sister who attended to their mother on a daily basis when she was being treated for a blood fungus infection.

Each private plaintiff observes the laws of the Sabbath and believes that they have a religious obligation to visit the sick.  Each testified, however, that this obligation is secondary to the laws of the Sabbath and need not be followed on the Sabbath when distance or other factors make visits impractical.

### 4.    Enforcement of the Zoning Law Against Bikur Cholim

On April 27, 2005 and May 8, 2005, Bikur Cholim was issued two notices, titled "Order to Remove Violation" by Suffern's Code Enforcement Officer John Loniewski.  The notices alleged that the Shabbos House constituted an impermissible use of the property.  Loniewski initiated proceedings in the Suffern Justice Court alleging the violations set forth in the notices and also issued an appearance ticket to Bikur Cholim.  On August 1, 2005, Loniewski observed fire safety violations under the New York State Residential Code concerning smoke alarms in and just outside of all sleeping areas.

Thereafter, Bikur Cholim applied to the Zoning Board of Appeals, requesting a use variance to continue operating the Shabbos House.  This application stayed the proceedings in the Justice Court.  In the application, Bikur Cholim requested a variance

24

to allow the use of the house for overnight occupancy for up to seventeen people who are family members of patients at Good Samaritan Hospital.  The application stated that overnight occupancy would be limited to Friday night and approximately ten Jewish holidays and that there would be no charge for staying at the House.  The appeal was based on "community hardship."  Bikur Cholim's request for up to seventeen guests was later reduced to fourteen guests.  In this case, plaintiffs state that they wish to use the house for up to fourteen guests.

The Zoning Law requires zoning decisions to be based on the four criteria set forth in section 266-54(D)(3)(a).  These factors require that the applicant demonstrate that: (1) it cannot receive a reasonable return on the property as shown by "competent financial evidence;" (2) the hardship is unique and does not apply to a substantial portion of the neighborhood; (3) the applicant's use would not alter the essential character of the neighborhood; and (4) the alleged hardship has not been self-created.

The Rockland County Commissioner of Planning recommended against granting the variance.  In a letter to the Zoning Board of Appeals, he wrote:

> [Bikur Cholim's proposed] use is incompatible with the single-family use that is predominant in the R-10 zoning district and is not consistent with the community character of the surrounding residential neighborhood.   A three-bedroom, single family residence cannot accommodate seventeen overnight guests....  [I]t seems unlikely that adequate on-site parking can be provided.

The Zoning Board of Appeals held a hearing on November 17, 2005 on Bikur Cholim's application.  The notice of the hearing stated that Bikur Cholim was appealing the violation notices so as "to permit maintenance and use of a conversion of a single family dwelling to a transient/motel use...."  Although between five and forty residents

25

typically attend Zoning Board meetings, over one hundred people attended the hearing.

At the hearing, Dr. Michael Lippe, Director of Emergency Room Services at Good

Samaritan Hospital, spoke on behalf of Bikur Cholim, noting some of the issues that

arise with observant patients concerning the Sabbath.  Bikur Cholim's attorney also

spoke.  In addition, several community members spoke against the variance

application.

The Zoning Board denied Bikur Cholim's application.  As reflected in the minutes

of the hearing, the Zoning Board found the following: (1) Bikur Cholim had "offered no

evidence, financial or otherwise, that the appellant cannot realize a reasonable rate of

return as a one-family residence;" (2) Bikur Cholim "failed to demonstrate enforcement

of the Code for one-family residences in that zoning district created a unique hardship

to his property;" and (3) "the hardship was self-created."  The Zoning Board also stated

that Bikur Cholim contended that the Shabbos House would not alter the essential

character of the neighborhood.  In addition, the Board noted at the hearing that:

> [I]t was decided that there was a credibility issue....  There are
> safety and fire issues.  The short form SEQR[9] was not
> completed. [Applicants] did not demonstrate any of the criteria
> for a use variance.  [The Board] believes a reasonable return
> could be had, the character of the neighborhood would be
> affected (safety of the children), and the hardship was self
> created.

Therefore, the Board voted unanimously to deny the application.  In his deposition,

Michael Holden, a member of the Zoning Board and defendant's rule 30(b)(6)

deponent, disavowed the Zoning Board's reliance on the issues of fire safety, the failure

---

[9]      A "SEQR" or "SEQRA" is a "Short Environmental Quality Review."

to complete a SEQR, the number of guests at the Shabbos House and the Rockland County GML review.

The Zoning Board later issued a document entitled "Appeal by Fellowship House of Suffern, Inc./Bikur Cholim-Partners In Health."  In the document, the Zoning Board made the following findings of fact:

1. The appellant does not intend to use the property as a "one-family dwelling unit...."

2. The appellant offered no financial evidence to indicate that it could not realize a reasonable return on the property as a one-family residence pursuant to the Code....

3. The appellant did not demonstrate the alleged hardship, namely the enforcement of the Code for this property to remain a one-family dwelling, was unique to this property and did not apply to a substantial portion of the district or neighborhood....

4. The appellant failed to demonstrate how permitting 14 unrelated overnight guests would not alter the essential character of the neighborhood, which consists primarily of one-family detached dwellings.  Based upon the evidence presented, the Board finds there are no other transient uses among the one-family dwellings in the neighborhood.

5. The appellant acknowledged that the hardship was self-created....

* * *

7. The use proposed is out of character with other homes in the district....  Given the nature of the proposed use, [the Shabbos House would] ... consequently create a negative impact on traffic in this neighborhood.

8. ... No evidence was offered as to how occupancy would be limited to 14 people.

27

9.    Although the appellant contends the use is "in furtherance of religious beliefs" that does not make the proposed use a "religious use."  It is not a tenet of the religion to visit patients in a hospital or to have a place to walk to after a visit or stay in the hospital.  The proposed use would be a convenience to people who wished to do that but the use in and of itself is not for religious purposes.

10.   The proposed use is not a place of worship.  It is a place for persons of a particular religious faith to lodge overnight.... The proposed use is not for the exercise of their religion but to accommodate persons for lodging purposes while family members are in the hospital.

11.   The appellant has failed to establish that enforcement of the Code on this property imposes a substantial burden on its religious exercise, particularly given that the appellant contends the property is still to be used as a "one-family" dwelling that is consistent with the surrounding neighborhood.... Although the application for a variance requests permission for use as a one family residence, the proposed use ... is actually a transient/motel use.

* * *

13.   The appellant did not prepare the SEQRA short form EAF and presented no evidence upon which this Board could make a SEQRA determination.

Holden was unable to identify this document or state what it was.  He further stated that certain explanations for the denial of the application included in the document were not the actual reasons for the Zoning Board's decision.  Specially, he denied that the following were concerns for the Zoning Board: (1) garbage issues; (2) concerns over the number of guests; (3) that Bikur Cholim's use was religious; (4) whether bikur cholim is a tenet of the Jewish religion; (5) the Shabbos House's use as a place of worship; (6) whether guests were from a particular synagogue or affiliated group; and (7) whether

28

the purpose of the Shabbos House was to allow Jewish people to exercise their religion.

Suffern asserts now that the application was denied because (1) Bikur Cholim has not shown that it could not obtain a reasonable return on its investment; (2) the hardship was self-created; and (3) Bikur Cholim failed to show that the proposed use would not alter the essential character of the neighborhood.  Holden testified that he believed that, given the use proposed by Bikur Cholim, any future application would likely be futile.  Specifically, he stated that "based on what I know today, the answer would be no, I can't see [Bikur Cholim being granted a variance] there."  Certain Zoning Board members testified in their depositions that the Zoning Board could place some restrictions upon the operations of the Shabbos House that would lead to it receiving a variance.

### 5.    Other Applications for Variances in the Village of Suffern

The Zoning Board has granted a use variance to the Knights of Columbus for the construction and use of a private membership club.  The building is used as a meeting hall and gathering place for members of the club.  The application was submitted prior to the purchase of the property.  Holden admitted in his deposition that none of the four factors for giving a variance were addressed in the application.  He further stated that because the Knights had yet to purchase the property, he did not believe that it could show that the hardship was not self-created.  Despite this, the application was granted.

Nextel Communications, a public utility, applied for a use variance to mount a wireless communication facility atop an existing apartment building.  In granting the application, the Zoning Board made no findings relating to the four factors.

29

The Zoning Board also granted a use variance to John DeNino to convert an office into a space to accommodate a children's party facility.  The applicant made no showing related to the four factors.

### 6.    Alternatives to the Shabbos House

There are no hotels or other places of lodging in the Village of Suffern.  The nearest such hotel is a Holiday Inn Hotel in Montebello, New York.  It is located 1.8 miles from Good Samaritan Hospital.  Many of the guests of the Shabbos House, including the elderly, the infirm and nursing mothers, would likely have a difficult time walking between the Hotel and the Hospital.  In addition, observant Jews often wear traditional black clothing and cannot carry flashlights or wear reflective tape on the Sabbath.  This would make it difficult for motorists to see them at night.

To reach the Holiday Inn from the Hospital, the most direct route is for a pedestrian to walk along Route 59.  The parties agree that Route 59 has poorly developed pedestrian facilities and sidewalks and does not meet widely recognized design standards for pedestrians.  In addition, areas of the road lack sidewalks, forcing pedestrians to walk on the shoulder.

### B.    Discussion on Summary Judgment

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a

reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for the party.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

The United States has moved for summary judgment on its claim that the Village of Suffern violated RLUIPA.  Defendant's motion is addressed to the RLUIPA claims of all plaintiffs.

The Court will first address defendant's procedural arguments in support of

31

summary judgment before turning to the substantive issues under RLUIPA covered by both motions.

### 1.    Whether Plaintiffs' Claims are Ripe

Defendant first moves for summary judgment on the grounds that plaintiffs' claims are not yet ripe because (1) Bikur Cholim did not appeal the notice of use violation and (2) Bikur Cholim's application for a use variance was allegedly perfunctory and lacking in necessary evidence.  The Court addressed these arguments above and, now with the benefit of a full record, adheres to its previous holding.

Private plaintiffs' case is a challenge to the Zoning Board's denial of Bikur Cholim's application for a use variance, not an appeal of the violation notice issued by Loniewski.  In addition, Bikur Cholim applied for a use variance as a means of defending against the violation notice.  Defendant's argument that private plaintiffs' claims are not yet ripe because of the lack of appeal of the violation is therefore misplaced.

RLUIPA does not excuse a landowner from local land use regulations.  See 146 Cong. Rec. S7774, 7776 (2000) (statement of Sens. Hatch & Kennedy) ("This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.").  In Murphy, the Second Circuit Court of Appeals confirmed that local land use procedures are applicable to land to be used for a religious purpose.  In that case, the Court of Appeals vacated the decision of the district court and instructed that the case be dismissed for plaintiffs' failure to appeal their land

32

use violation to the local zoning board of appeals.  See Murphy, 402 F.3d 342.

Even if Bikur Cholim had appealed the violation to the Zoning Board, the Court finds that such an appeal would have been futile.  The Zoning Board denied the variance, finding that the Shabbos House did not meet the criteria for a use variance in an R-10 zone.  On what basis could Bikur Cholim have successfully appealed the violation notice; how could it have raised different issues than the variance application did?  Defendant's argument that such an appeal would have had any likelihood of success is misplaced considering the denial of the variance.

The concerns of the Court of Appeals in Murphy about the development of a full record of the facts and standards underlying the operations of the Shabbos House and the relevant zoning provisions are mitigated in this case by the Zoning Board's decision on the variance application.  See Murphy, 402 F.3d at 352 ("[B]efore the Zoning Board of Appeals the Murphys would have had the opportunity to challenge and develop a record on the standards (or lack thereof) underlying New Milford's determination....  In addition, the availability of alternative restrictions ... may have been explored.").  In this case, plaintiffs' injuries are not ill-defined as they were in Murphy.  The Zoning Board addressed the merits of Bikur Cholim's use, albeit in a different context than an appeal, as distinguished from Murphy where the zoning board did not address the cease and desist order.

Similarly, the Court cannot find that Bikur Cholim's application was perfunctory and not reviewed.  Although the Zoning Board's decision referred to Bikur Cholim's failure to proffer evidence to meet the four criteria under section 266-54(D)(3)(a) of the Zoning Law, the minutes of the Zoning Board hearing indicate that these issues were

33

addressed.  In addition, the Zoning Board previously had granted variances without a full discussion of the four criteria.  In light of this, the Court believes that Bikur Cholim made a strategic decision to address the strong points of its application and ignore the weaknesses.  The application was denied on its merits despite Bikur Cholim's presentation.  While defendant contends Bikur Cholim's application may have been weak, there is no reason to believe that it was not a sincere and forthright application. Therefore, the Court finds that plaintiffs' claims are ripe for review.

### 2.   Whether the United States Has Failed to Name and Serve a Necessary Party

Defendant next argues that the United States has failed to name and serve a necessary party.  Specifically, defendant contends that because, under New York law, only a zoning board of appeals, and not the town or village, has the authority to grant or deny a variance, the United States' failure to name the Zoning Board as a defendant means that this case is jurisdictionally deficient and must be dismissed.  This argument is limited to the United States' complaint as the heading of point II of defendant's memorandum of law in support of summary judgment is entitled: "The Government Failed to Name and Serve a Necessary Party."  Further, defendant did not address private plaintiffs' action in this section of its memorandum of law.

The United States' complaint seeks (1) a declaration that the denial of the variance violated RLUIPA and (2) an injunction enjoining the Village of Suffern from applying Suffern's zoning laws that would substantially burden individuals' religious exercise related to Bikur Cholim or in a matter that would violate RLUIPA.  Private plaintiffs' amended complaint seeks similar relief.  They also seek relief under Article 78

of the New York Civil Procedure Law and Rules, which, if successful, would have the Court overturn the denial of the variance.  Only private plaintiffs' complaint seeks a variance.

Under New York law, the authority to grant variances lies exclusively with the local zoning board of appeals, which enforces the zoning scheme created by the local legislature.  Commco, Inc. v. Amelkin, 62 N.Y.2d 260, 267 (1984); N.Y. Town Law § 267.  A zoning board is a distinct and separate legal entity whose members serve pursuant to the authority granted by the New York law.  Commco, 62 N.Y.2d at 266-67; Town Law § 267.

In addressing Article 78 proceedings, courts have been very mindful that the town or village is not the proper defendant or respondent.  See, e.g., Commco, 62 N.Y.2d at 265-66; Emmett v. Town of Edmeston, 3 A.D.3d 816, 819 (3d Dep't), aff'd, 2 N.Y.3d 817 (2004).  On the other hand, where a plaintiff seeks to enjoin enforcement of a zoning decision, courts have upheld the naming of only the town as defendant and not the appropriate zoning board.  See, e.g., Leblanc-Sternberg v. Fletcher, 104 F.3d 355, 1996 U.S. App. LEXIS 31800 (2d Cir. Dec. 6, 1996) (affirming injunction enjoining village from denying equal protection of laws by enforcing its zoning code and requiring village to revise zoning code; zoning board was not named as defendant); cf. Congregation Mischknois Lavier Yakov, Inc. v. Bd. of Trs. for Vill. of Airmont, 301 Fed. Appx. 14, 15 (2d Cir. 2008) (affirming judgment of district court where court "so ordered" stipulation between plaintiffs and village that would allow plaintiffs to construct a

residential school and local zoning board was not a party to action).[10]

This Court thus concludes that it has the power and authority, if appropriate, to enjoin defendant from enforcing its Zoning Law and requiring it to revise the Zoning Law to comply with RLUIPA and relevant constitutional provisions pursuant to the allegations of the United States' complaint.  "[T]he power of the federal courts to remedy constitutional violations is broad and flexible."  Leblanc-Sternberg, 1996 U.S. App. LEXIS 31800, *6.  An exercise of such power in this case is permissible.

Because defendant did not move for summary judgment against private plaintiffs' amended complaint on the basis of their failure to name the Zoning Board as a defendant, the Court will not making any rulings on the sufficiency of private plaintiffs' complaint and the availability of the requested relief.  The Court, however, questions whether it has the authority to issue relief under Article 78 without the Zoning Board being named as a defendant.  The Court will reserve judgment on this issue until such time as it raised, on a motion, by the parties.

### 3.    Claims Under RLUIPA

Defendant moved for summary judgment on private plaintiffs' and the United States' RLUIPA claims, arguing that plaintiffs have failed to establish that Bikur Cholim's use of the property is a "religious exercise," and that, even if it was a religious exercise, plaintiffs have failed to show that it was substantially burdened by the denial of the variance.  In support of its motion for summary judgment, the United States

---

[10]        The Court also notes that in Westchester Day Sch., it ordered the local zoning board to issue a special permit for construction.  In that case, the zoning board was named as a defendant, as was the village itself.  See Westchester Day Sch. v. Vill. of Mamaroneck, 417 F. Supp. 2d 477, 572 (S.D.N.Y. 2006).

contends that defendant has failed to demonstrate that it has a compelling interest and used the least restrictive means to further that interest in denying the variance and enforcing its zoning law.  Each party further asserts that it has met its burden of persuasion as to the various elements required under RLUIPA.

As discussed above, RLUIPA requires that a municipality's land use regulations be structured and applied in a manner that does not impose a "substantial burden on the religious exercise of a person ... or institution, unless the government demonstrates that imposition of the burden on that person ... or institution is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  To demonstrate a claim under RLUIPA, plaintiffs must show that the land use regulation (1) imposes a substantial burden (2) on the "religious exercise" (3) of a person, institution, or assembly.  42 U.S.C. § 2000cc(a)(1); Westchester Day Sch. II, 379 F. Supp. 2d at 555.  Even if it substantially burdens religious exercise, a land use provision does not violate RLUIPA when it furthers a compelling state interest and does so using the least restrictive means.  Defendant bears the burden of proof on this issue.

### a.    Religious Exercise Analysis

RLUIPA requires plaintiffs to prove that bikur cholim is a "religious exercise" under the law.  RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  "The use, building, or conversion of real property for the purpose of religious exercise shall be considered ... religious exercise."  42 U.S.C. § 2000cc-5(7)(B).  "Religious exercise" under RLUIPA is to be defined broadly and "to the

37

maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g); Westchester Day Sch. III, 504 F.3d at 347.

"Religious exercise" as used in RLUIPA "covers most any activity that is tied to a religious group's mission."  Living Water Church of God v. Charter Twp. Meridian, 258 Fed. Appx. 729, 736 (6th Cir. 2007).  Plaintiffs must show that the activity is a "sincere exercise of religion" even if the activity is not compelled by the religion.  Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 663 (10th Cir. 2006).  Not every activity carried out by a religious institution, however, is a "religious exercise."  146 Cong. Rec. S7774, S7776 (2000) (noting that when religious institutions use property in ways comparable to secular institutions, such activity may not necessarily constitute "religious exercise").

The law "bars inquiry into whether a particular belief or practice is 'central' to [an individual's] religion."  Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005) (inmate's RLUIPA action).  In addition, the Court may not judge the merits of various religious practices.  As the Second Circuit Court of Appeals has stated:

> Because the free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires, courts are not permitted to inquire into the centrality of a professed belief to the adherent's religion or to question its validity in determining whether a religious practice exists.   As such, religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.   An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.

Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002).

In light of this, the evidence clearly demonstrates that Rabbi Lauber is motivated

38

by the religious obligation of bikur cholim.  He testified that he believes it is his religious

duty to help the sick and their family.  Running the Shabbos House is his exercise of

this duty.  Whether the Shabbos House is an absolute obligation – that is, whether it is

secondary to any other religious precepts – does not affect its status as a "religious

exercise" under the law.[11]

The conclusion as to the individual plaintiffs is not as clear.  On the one hand,

they testified that they used the Shabbos House to fulfill the obligation of bikur cholim in

visiting their family members at Good Samaritan Hospital.  On the other hand, a

reasonable jury may find that it is not a religious motivation, but a familial motivation

that encourages them to visit their family members.  In other words, many children with

sick parents or spouses with sick partners visit their loved ones in hospitals for non-

religious reasons.

Fifth Ave. Presbyterian Church, however, answers this question.  There, a

church argued that it had a free exercise right to use several outdoor staircases on its

property for homeless persons to sleep.  Almost two years later, New York City

informed the church that the city would no longer allow the homeless to sleep on the

stairs and proceeded to remove the homeless from the church's stairs.  The city argued

that the homeless were a public nuisance.  After the Court issued a preliminary

---

[11]     The Court does not agree with defendant that the importance of the
religious obligation is affected by Rabbi Lauber's receipt of a salary for his actions.
There is no reason for the Court to discount Rabbi Lauber's testimony that he
administers the Shabbos House out of a religious obligation and not a financial desire.
In addition, defendant cites no case to suggest that these are mutually exclusive
motivations or that the presence of a financial interest defeats a religious motive in
determining whether an activity is a religious exercise.

injunction allowing the church to operate a de facto homeless shelter on its stairs, but not on its property adjacent to the public sidewalk, the city appealed.  The Court of Appeals for the Second Circuit upheld the preliminary injunction, finding that when the church allowed homeless people to sleep on its stairs, that constituted a religious exercise under the First Amendment.  Fifth Ave. Presbyterian Church, 293 F.3d 570.

The church's program can be seen from two perspectives.  The first is as a religiously-motivated program for the welfare of the community.  The second is as a secular program aimed at improving the community.  In finding the church's activities to be religiously motivated, the Court of Appeals implied that even if a religious exercise has a corresponding secular purpose that may be otherwise met by secular organizations, that exercise may still constitute a religious exercise to the religious institution.  See also Grace United Methodist Church, 451 F.3d at 662-63 (observing that activity need not be mandatory to be a "religious exercise").

So too here.  While individual plaintiffs' actions may be partly motivated by their obligations as family members, their testimony that they are also obligated by the tenets of their faith and the Court's reluctance to question those feelings leads the Court to conclude that the obligation to engage in bikur cholim is a religious activity.  This activity, however, means taking care of the sick.  In this case, it is visiting them at the hospital.

### b.    Substantial Burden Analysis

The phrase "substantial burden" is a term of art in Supreme Court jurisprudence, defined previously in numerous cases on the Free Exercise Clause.  See, e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988); Hobbie v.

Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141 (1987); Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981); Sherbert v. Verner, 374 U.S. 398, 404 (1963).  In enacting RLUIPA, Congress did not intend to depart from the traditional definition provided by previous cases.  Indeed, RLUIPA's legislative history indicates that Congress meant for the term "substantial burden" to be interpreted "by reference to Supreme Court jurisprudence."  146 Cong. Rec. S7774, S7776 (2000).

In general Supreme Court jurisprudence, a substantial burden exists when an individual is forced to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion ... on the other hand."  Sherbert, 374 U.S. at 404.  In the context of land use regulations, however, the Court of Appeals has defined a substantial burden as where "government action ... directly coerces the religious institution to change its behavior." Westchester Day Sch. III, 504 F.3d at 349; see also Vision Church v. Vill. of Long Grove, 468 F.3d 975, 997 (7th Cir. 2006) ("[A] land use regulation imposes a 'substantial burden' on religious exercise if it necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise – including the use of real property for the purpose thereof within the regulated jurisdiction generally – effectively impracticable."); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) ("[A] 'substantial burden' must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."); San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) ("[F]or a land use regulation to impose a 'substantial burden,' it must be oppressive to a significantly great

41

extent.").

If the denial of an application for a variance has a minimal impact on the institution's religious exercise, the denial is not a substantial burden.  Westchester Day Sch. III, 504 F.3d at 349.  But a complete denial of the enjoyment of the property is not required to show a substantial burden.  Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 900 (7th Cir. 2005).  Where an organization has no realistic alternatives to its desired use, a temporary or incomplete denial may constitute a substantial burden.  Westchester Day Sch. III, 504 F.3d at 349.

It would be inappropriate to look only at the effects of a denial to determine whether there is a substantial burden.  As the Supreme Court has cautioned, "[t]he freedom asserted by [some may] bring them into collision with [the] rights asserted by" others and that "[i]t is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin."  Braunfeld v. Brown, 366 U.S. 599, 604 (1961).  Therefore, generally applicable regulations, imposed a neutral manner, are not substantial burdens.  Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 389-91 (1990).

Private plaintiffs testified that the commandment of bikur cholim could become secondary to the observation of the Sabbath where bikur cholim is made impractical by distance or weather.  Furthermore, Rabbi Lauber testified that the religious obligation of bikur cholim depends on the conditions, distance and safety concerns.

This case is not about visiting family members at the hospital.  It is about whether the enforcement of a zoning code against a communal home operated to accommodate certain individuals' religious practices constitutes a substantial burden on

42

religious exercise.  The cases presented by the parties are inapposite to this point.  The Court is not addressing the expansion of a religious school or the placement of a church or synagogue.  Instead, the Court is analyzing a house maintained to allow individuals to exercise their religion conveniently.

The Court questions whether the denial of a variance and the absence of the Shabbos House substantially burdens the observance of bikur cholim if the weather can equally interfere with its observance and prevent the practice of bikur cholim.  No doubt, a religious practice that is aspirational may be substantially burdened.  Further, the Court recognizes that it is outside its province to question Jewish law and private plaintiffs' religious beliefs.  Given that (1) the commandments are to visit the sick and to observe the Sabbath, (2) the commandment to visit the sick may take a back seat to the observance of the Sabbath and (3) this case concerns accommodations to observe those commandments, it is a question for the factfinder as to whether private plaintiffs' religious observance is substantially burdened.  Summary judgment will be denied as to the individual plaintiffs as the Court cannot conclude that this is a substantial burden. See Bey v. Douglas County Corr. Facility, 2008 U.S. Dist. LEXIS 54703, *10 (D. Kan. July 15, 2008) (whether an action is a "substantial burden" is a question of fact for jury; RLUIPA prisoner case).

Because the Court finds that there is a question of fact as to whether private plaintiffs' religious exercise was substantially burdened, it will not address the significance of the Holiday Inn and how its presence affects the substantial burden analysis.

### c.   Compelling State Interest

The United States argues that the Village lacks a compelling interest in enforcing its Zoning Code so as to bar the Shabbos House.  In response, defendant argues that it has a compelling interest in upholding its zoning laws and the neighborhood characteristics that are at the heart of the zoning laws.

A compelling interest is an "interest[ ] of the highest order."  <u>Westchester Day Sch. III</u>, 504 F.3d at 353.  As the Supreme Court stated in the context of free exercise claims, "only the gravest abuses, endangering paramount interests, give occasion for permissible limitation."  <u>Sherbert</u>, 374 U.S. at 406.

While upholding zoning laws may be considered a compelling interest, the Village must demonstrate that the enforcement in those zoning laws is compelling in this particular instance, not in the general scheme of things.  <u>See</u> <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 432 (2006) ("Under the more focused inquiry required by RFRA and the compelling interest test, the Government's mere invocation of the general characteristics of Schedule I substances ... cannot carry the day....  [T]here is no indication that Congress ... considered the harms posed by the particular use at issue here....").

Bikur Cholim's variance application was denied, on its merits, because the Zoning Board was not satisfied that the use of Shabbos House would fit into community of single-family homes.  Specifically, the Zoning Board found that the Shabbos House would affect the character of the neighborhood and endanger neighborhood children.  According to the Zoning Law, the burden of demonstrating a right to a variance lies with the applicant.

44

The Court will not take a position on whether there was substantial evidence to support this conclusion.  Nor will the Court comment on whether these concerns are compelling.  Instead, the Court finds that there are disputed issues of material fact precluding it from granting summary judgment on this issue.  Therefore, the Court will address whether the denial of the variance was the least restrictive means of furthering the interest.

### d.    Least Restrictive Means

Under the least restrictive means test, the Village must show that there are "no alternative forms of regulation" that would further the compelling interest.  Sherbert, 374 U.S. at 407.  Further, "if a less restrictive means is available for the Government to achieve its goals, the Government must use it."  United States v. Playboy Entm't Group, 529 U.S. 803, 815 (2000).  The village must prove that any "plausible, less restrictive alternative would be ineffective" in achieving its goals.  Id. at 816.

In Westchester Day Sch. III, the Court of Appeals affirmed the district court's finding that the zoning board's complete denial of a construction permit when it had the authority to authorize the permit with conditions was not the least restrictive means of further the village's interest.  Westchester Day Sch. III, 504 F.3d at 353.

Here, the members of the Zoning Board testified, as did Holden on behalf of the Village, that they could have granted the use variance subject to various restrictions.  Therefore, because a reasonable factfinder could find that there are less restrictive alternatives to further the Village's interests, the Court will deny summary judgment on this issue.

45

### e. Whether the Zoning Law was Neutrally Applied

Courts have previously held that a neutrally-applicable zoning law cannot pose a substantial burden under RLUIPA.  See, e.g., Midrash Sephardi, 366 F.3d at 1227-28 & n.11; Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 763 (7th Cir. 2003) ("[N]o Free Exercise Clause violation results where a burden on religious exercise is the incidental effect of a neutral, generally applicable, and otherwise valid regulation, in which case such regulation need not be justified by a compelling governmental interest.").  In this case, there are questions of fact as to whether defendant applied its Zoning Law in a neutral, general manner given the grants by the Zoning Board of variances to the Knights of Columbus, Nextel Communications and John DeNino.  While these situations may be distinguishable, they are significantly similar to Bikur Cholim's as to present a question for the factfinder.

### 4. Private Plaintiffs' Other Claims

Private plaintiffs also assert claims under the equal terms and discriminations provisions of RLUIPA.  See 42 U.S.C. §§ 2000cc(b)(1), (2).  Defendant did not raise or address these issues in its motion for summary judgment.  In addition, these claims have different elements than a claim under 42 U.S.C. § 2000cc(a).  See, e.g., Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 261-69 (3d Cir. 2007).  The Court has not reviewed the merits of such claims on summary judgment but finds that there are disputes issues of fact as to these other claims.  Therefore, these claims will be left for trial.

### III.     Motion to Strike

Private plaintiffs have filed a motion (Doc. #151) to strike the affidavit of Robert Magrino, the Assistant Village Attorney of the Village of Suffern, or, in the alternative, for permission to depose Magrino.  Magrino's affidavit was offered in support of defendant's motion for summary judgment.  The Court is inclined to grant private plaintiffs' motion and allow them to depose Magrino.  But because the Court will deny defendant's motion for summary judgment, the Court will instead deny private plaintiffs' motion to strike as moot.[12]

### IV.     Motions for Preliminary Injunction

Plaintiffs and defendant have together filed three motions for preliminary injunctions.  Plaintiffs' motions seek the maintenance of the status quo with the Shabbos House operating, while defendant's motion seeks a preliminary injunction against the operations of the House.  The parties have represented to the Court and defendant has stated in its memorandum of law in support of its motion for summary judgment that the parties have consented to the maintenance of the status quo during the pendency of these proceedings.  The Court applauds the parties for agreeing to this freeze of proceedings.

In light of this informal stay, the Court will not rule on the motions for preliminary injunction, but will instead take them under advisement through trial.  Counsel should contact the Court if circumstances change that would require the Court to act upon these motions.

---

[12]     This conclusion is without prejudice to plaintiffs filing motions in limine as to Magrino's testimony prior to trial, as appropriate, or deposing Magrino prior to trial.

V.      **Summary**

To summarize the Court's ruling, private plaintiffs' claim for a violation of the Fourteenth Amendment Equal Protection Clause will be dismissed under rule 12(b)(6). As to plaintiffs' RLUIPA claims, the Court concluded that Rabbi Lauber's administration of the Shabbos House and private plaintiffs' utilizing the Shabbos House constitute "religious exercise" under RLUIPA.  As to all other elements of the RLUIPA claims, these remain for the factfinder.

Further, the Court will deny the motion to strike as moot in light of the fact that Magrino's testimony would not have affected the Court's decision or analysis.  Even if Magrino had testified to improprieties in the Zoning Board's decision making, this would not have helped plaintiffs' show a substantial burden on a religious exercise or a lack of a compelling interest.  Magrino's testimony could only have bolstered defendant's arguments, which the Court found was insufficient to warrant summary judgment.

The motions for preliminary injunctions will remain pending before the Court through trial.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss private plaintiffs' complaint (Doc. #23) only as to the equal protection claim; DENIES defendant's motion to dismiss against the United States (7:06-cv-7713, Doc. #3; Doc. #88); DENIES the parties' motions for summary judgment (Docs. #133, 142) except as to plaintiffs' claims that the Shabbos House constitutes "religious exercise;" and DENIES as moot private plaintiffs' motion to strike (Doc. #151).  The Court takes no action on the motions for preliminary injunctions.

Dated at White Plains, New York, this 24 TH day of June, 2009.

Warren W. Eginton
Senior United States District Judge